[No. 12262.  Department One.  March 3, 1915.]

MELVILLE GUERRIERI, *Appellant*, v. INDUSTRIAL INSURANCE
COMMISSION, *Respondent*.[1]

MASTER AND SERVANT — WORKMEN'S COMPENSATION ACT—"EXTRA-
HAZARDOUS" EMPLOYMENTS—STATUTES—CONSTRUCTION.  The opera-
tion of a passenger or freight elevator is not an extra-hazardous em-
ployment entitling the operator to compensation for injuries within
the definition of the workmen's compensation act, 3 Rem. & Bal.
Code, §§ 6604-2, 6604-3, which includes "factories, mills . . . brew-
eries, elevators, wharves, docks . . ." etc., since the context and
setting of the words indicates a legislative intent to cover classes
of business rather than particular pieces of machinery, and the use
of the words "passenger and freight elevators" in § 6604-4, under the
classification of "construction work," shows that the statute means
those engaged in the manufacture or construction of freight and
passenger elevators; especially in view of the fact that the schedule
of rates to be paid does not specifically cover passenger or freight
elevators, but does include the operation of grain elevators.

Appeal from a judgment of the superior court for King
county, Webster, J., entered December 13, 1913, sustaining
an order of the industrial insurance commission rejecting a
claim for personal injuries sustained by an elevator boy.
Affirmed.

*Brady & Rummens* and *Clise & Poe*, for appellant.

*The Attorney General* and *John M. Wilson, Assistant*, for
respondent.

CHADWICK, J.—The only question raised by this appeal
is whether one who is engaged in operating a passenger and
freight elevator or lift in a mercantile establishment is a
workman engaged in an extra hazardous employment and
entitled to compensation under the workmen's compensation
law, ch. 74, Laws of 1911, p. 345 (3 Rem. & Bal. Code,
§ 6604-1 *et seq.*).

It is the holding of the industrial insurance commission
and of the *Attorney General* that operators of elevators are

[1]Reported in 146 Pac. 608.

not within the terms of the law.  It was so held by the court below.

Section 2 (Id., § 6604-2) of the act classifies employments "inherently constantly dangerous" and therefore "extra hazardous" as follows:

"Factories, mills and workshops where machinery is used; printing, electrotyping, photo-engraving and stereotyping plants where machinery is used; foundries, blast furnaces, mines, wells, gas works, waterworks, reduction-works, breweries, *elevators,* wharves, docks, dredges, smelters, powderworks; laundries operated by power; quarries; engineering works; logging, lumbering and ship-building operations; logging, street and interurban railroads; buildings being constructed, repaired, moved or demolished; telegraph, telephone, electric light or power plants or lines, steam heating or power plants, steamboats, tugs, ferries and railroads."

It is the contention of appellant that the word "elevators," which we have italicized, means freight and passenger elevators.

When tested by the ordinary rules of statutory construction, we think it is clear that this is not so.  The context of the section, the setting of the word, indicate a legislative intent to cover classes of business rather than particular pieces or kinds of machinery.  Thus: "factories, mills, . . . breweries, elevators, wharves, docks, . . . &c."

Section 3 (Id., § 6604-3) defines certain terms and classes of business.  "Mill" means "any plant, premises, room or place where machinery is used &c.  . . .  including elevators, warehouses and bunkers."

Section 4 (Id., § 6604-4) schedules the rates to be paid.  No schedule specifically covers passenger or freight elevators.  In the same section under the subhead "Construction Work," industries are classified.  In class 5 are found the words "freight and passenger elevators."  Here as before, the context and setting of the words indicate that the statute means those engaged in the manufacture or work of construction of freight and passenger elevators.  Bearing in mind the title

of the classification "Construction Work," the paragraph reads:

"Iron or steel frame structures or parts of structures; fire escapes; erecting fire-proof doors or shutters; blast furnaces; concrete chimneys; freight or passenger elevators; fireproofing of buildings; galvanized iron or tin work; marble, stone or brick work; roof work; slate work; plumbing work; metal smokestack or chimneys; advertising signs; ornamental metal work in buildings; carpenter work not otherwise specified; marble, stone or tile setting; mantel setting; metal ceiling work; painting of buildings or structures; concrete laying in floors or foundations; glass setting; building hot houses; lathing; paper hanging; plastering; wooden stair building." 3 Rem. & Bal. Code, § 6604-4.

This conclusion is fortified by reference to Class 21, page 354. Under the sub-title "Operation (including repair work)" we find the classification "Grain elevators." This brings section 4 into harmony with sections 2 and 3, and makes it certain that there was no purpose to cover the operation of an ordinary freight or passenger elevator or to recognize it as an extra hazardous occupation or as one inherently dangerous.

The manifest intent of the law is not to cover and compensate for accidents generally, but to cover accidents occurring in those employments or occupations which are specifically classed as, or which may be found by the commission to be, extra hazardous.

Affirmed.

MORRIS, C. J., MOUNT, PARKER, and HOLCOMB, JJ., concur.