ETHEL B. STOREY, Administratrix, Appellee, v. J. C. MARDIS
COMPANY et al., Appellants.

MASTER AND SERVANT:  Duties and Liabilities of Master—Safe
1  Place to Work—Construction of Scaffold.  The master may fur-
nish the material and confer upon the employees the duty of
constructing their own staging and scaffolding, as the same
becomes necessary in the progress of the work, and in such
case, negligent construction is not to be imputed to him, as
between him and the constructing employees or their fellow
servants; but where the master causes a scaffold to be erected
by workmen other than those who are to use the same, he
thereby undertakes to furnish a ready-made scaffold as a place
of work, and assumes the duty of seeing that it is reasonably
safe.

MASTER AND SERVANT:  Assumption of Risk—Safe Place to
2  Work.  An employee does not assume the risk arising out of the
employer's negligence in failing to furnish a scaffold, as such
defense has been abolished by statute in this state.

MASTER AND SERVANT:  Duties and Liabilities of Master—Safe
3  Place to Work—Absence of Railing on Scaffolding.  In an action
for the death of an employee, caused by falling from a scaffold,
whether the absence of a railing on the scaffold constituted neg-
ligence on the part of the employer held a question for the
jury.

EVIDENCE:  Relevancy, Materiality, and Competency—Nailing of
4  Boards after Accident.  Evidence that boards on a scaffold were
nailed shortly after decedent fell therefrom was admissible in
corroboration of plaintiff's evidence that they were not nailed
at the time of the accident.

EVIDENCE:  Relevancy, Materiality, and Competency—Subsequent
5  Conditions not Admissible.  In an action for the death of an
employee, caused by falling from an unrailed scaffold, evidence
that a railing was constructed thereon two or three days after
the accident was inadmissible.

TRIAL:  Instructions—Inconsistent or Contradictory—Correct when
6  Taken Together.  An instruction to the effect that, if the jury
found the negligence of the defendant to have been the proxi-
mate cause of the fall of the deceased, the jury would be war-

ranted in finding for the plaintiff, and not containing a saving reference on the question of the contributory negligence of the plaintiff, *held* not to have been error or inconsistent, when taken in connection with the preceding instruction, which, in effect, charged that, if the decedent did not exercise ordinary care, the verdict should be for the defendant.

*Appeal from Polk District Court.*—LAWRENCE DEGRAFF, Judge.

JULY 2, 1919.

ACTION for damages by an administratrix for the wrongful death of her intestate, who was accidentally killed in the course of his employment as an employee of the defendant. There was a verdict for the plaintiff, and the defendant appeals.—*Affirmed.*

*Parker, Parrish & Miller* and *C. Woodbridge,* for appellants.

*Clark, Byers & Hutchinson,* for appellee.

EVANS, J.—The defendant is a general contractor, and as such, employs men of various trades in the performance of his contracts. At the time of the accident in question, the defendant was engaged in performing a contract for the remodeling and repairing of the Shops Building in Des Moines. For this purpose, he had in his employ carpenters, bricklayers, plumbers, painters, etc. The deceased was a bricklayer, and was engaged in the defendant's employ as such. He was engaged in taking down and rebuilding a part of the wall. The place of his work was four stories above the ground, and he occupied a scaffold as such place of work. Shortly after he had entered upon his work upon such scaffold, he fell therefrom, and was killed thereby. The principal specifications of negligence relied on by the plaintiff are:

(1)   That the boards which constituted the floor of

the scaffold were not nailed to the supports; whereas they ought to have been so nailed.

(2)    That said boards extended for an undue length at each end beyond the supports upon which they rested, and were, therefore, in danger of tipping when weight was put thereon.

(3)    That the scaffold had no railing.

The defense interposed is a general denial and a plea of contributory negligence. The broad grounds of defense urged particularly in argument are.:

(1)    That, if there was negligence in the construction of the scaffold, it was the negligence of the fellow servants who constructed the same, for which the master was not liable.

(2)    That the defects in the scaffold complained of in the petition were all open and obvious, and could have been readily observed by the deceased; that, if he failed to observe them, or if he ignored them after observing them, he was guilty of contributory negligence; and that, in any event, he assumed the risk.

The foregoing are reducible to the broad contention that the master was under no magisterial obligation to furnish to his employees a *scaffold* upon which to work, and that the carpenters who erected the same were not, in such work, engaged upon the performance of the master's duty. Before proceeding to a consideration of these contentions, a few details of evidence must first be stated. The deceased had nothing to do with the erection of the scaffold in question, nor does it appear that it was any part of his employment to make such scaffold. The scaffold had been built by two carpenters, under the direction of the defendant's foreman, who directed the method and details of the construction. In coming to his work at such place, the deceased came to his place of work upon a scaffold ready-made. The witnesses to the accident testified that a board

tipped up, and that the deceased fell from the end of it. There was a dispute in the evidence as to whether the boards were securely nailed or not. Concededly, there was no railing. Concededly, also, the floor boards extended at each end two or three feet beyond the lookout upon which they were supported.

I. Was the scaffold the deceased employee's *place of work,* within the meaning of the law which imposes upon the master the duty to see that it is reasonably safe?

The law of the scaffold is peculiarly complex, and judicial decisions thereon are not wholly harmonious. It is undoubtedly true that it is competent for the master to furnish the materials and to confer upon his employees the duty, as such, to construct their own staging and scaffolding which may become necessary from time to time in the progress of the work undertaken. In such case, the negligent construction is not imputed to the master, as between him and the constructing employees or their fellow servants. On the other hand, it is the rule adopted by many modern authorities that, where a master does cause a scaffold to be erected by workmen other than those who are to use the same, and thereby undertakes to furnish a ready-made scaffold to other workmen, he is deemed as adopting such scaffold as a place of work for such workmen, and as assuming the duty of seeing that it is reasonably safe. In *Chambers v. American Tin Plate Co.,* 129 Fed. 561, the rule is stated as follows:

1. MASTER AND SERVANT: duties and liabilities of master: safe place to work: construction of scaffold.

"There is a line of cases holding that, when the employer furnishes suitable materials, and the workmen themselves construct a scaffolding or staging as a part of the work which they undertake to perform, and build it according to their own judgment, that the employer is not liable for an injury to one of their own number, sustained in the subsequent use of the structure, in consequence of negli-

gence in construction. The erection and re-erection of such a staging, as the work requiring its use progresses, being itself a part of the very work which the employees are to do, takes it without the general rule in respect to the duty of the master to exercise reasonable care to furnish a reasonably safe place and appliances.   *   *   *   But the rule is quite otherwise if the employer himself undertake to furnish such scaffolding for the men who are to work thereon. In such case, the duty is one of those positive duties of the master toward the servant which cannot be discharged by the substitution of a competent agent. The act or service to be done is that of furnishing a reasonably safe place or appliance, and negligence in the doing of such a service is the negligence of the master, without regard to the rank of different employees."

We are committed to this rule. *Garvey v. Boody, etc., Co.,* 176 Iowa 273. The following authorities are to the same effect: *Bourbonnais v. West Boylston Mfg. Co.,* 184 Mass. 250 (68 N. E. 232) ; *Chicago & A. R. Co. v. Scanlan,* 170 Ill. 106 (48 N. E. 826) ; *McBeath v. Rawle,* 192 Ill. 626 (61 N. E. 847) ; *Cole v. Warren Mfg. Co.,* 63 N. J. L. 626 (44 Atl. 647) ; *Liedke v. Moran Bros. Co.,* 43 Wash. 428 (86 Pac. 646).

Under the undisputed evidence in this case, it must be held that the scaffold had been furnished by the master to the deceased employee as his place of work.

II. Because the alleged defects of the scaffold were, as alleged by the defendant, obvious and necessarily known to the deceased, it is contended that such defects did not constitute negligence of the master as to

2. MASTER AND SERVANT: assumption of risk: safe place to work.

this employee, and further contended that the deceased himself was guilty of contributory negligence, and that he assumed the risk. The question of contributory negligence was one of fact, and was properly submitted to the

jury. The absence of the railing was, of course, obvious. If the defense of the assumption of risk were available to the defendant, the obvious character of the defects would assume added importance. Under our recent legislation, such defense is abolished. Recognizing that fact, the defendant did not plead it as a defense. It is no more available to him in argument than it was in pleading. The defendant has cited and quoted from a large number of authorities in support of his proposition at this point. An examination of them discloses that virtually all of them were assumption of risk cases. If the defendant was negligent in failing to furnish a reasonably safe scaffold, then, under our present statute, the deceased cannot be deemed to have assumed the risk arising out of such negligence, even though he had observed the defects resulting from such negligence. We do not overlook the defendant's contention that he assumed the risk *incident* to his work. But if the danger thus risked arose out of the negligence of the master in the construction of the scaffold, then it was not a risk inherent in or incident to the work. So we come back to our starting point, Was the scaffold negligently constructed? It is urged by the defendant that the absence of a railing was not negligence. The trial court instructed properly that the absence of the railing was not necessarily negligence; but whether, under all the circumstances appearing in evidence, it was such, was a question for the consideration and determination of the jury. The jury might well have found that, if the floor boards had been securely nailed, the absence of a railing would not have been negligence. If it were deemed necessary to lay the boards loosely, without nailing them, it might well be found that additional security should be provided in the way of railing. We think, therefore, that the absence of railing was a proper question for

3. MASTER AND SERVANT: duties and liabilities of master: safe place to work: absence of railing on scaffolding.

the consideration of the jury, in the light of all the facts
pertaining to the construction of the scaffold.

That the floor boards should have been nailed down is
virtually conceded in the evidence for the defendant. The
foreman of the defendant as a witness testified to that ef-
fect. The defendant's contention at this point is not that
the boards need not have been nailed, but that they were, in
fact, nailed. On that question there was sharp conflict in
the evidence, both direct and circumstantial.

III. Complaint is made of certain rulings on evidence.
Some evidence was introduced of facts transpiring after
the accident. One of these was that someone nailed the
floor boards of the scaffold immediately
after the accident. Another was that a
railing was constructed about the scaffold
two or three days later. Certain witnesses
for the plaintiff testified to their observa-
tion of these boards, at the time and im-
mediately after the accident, and that they were not nailed.
As against this testimony, it appeared without dispute that,
at a time of observation within 40 minutes after the acci-
dent, the boards were found to be securely nailed. As
against this fact, witnesses testified on behalf of plaintiff
that, within a few minutes after the accident, they saw two
persons on such scaffold, driving nails. This testimony
was strenuously objected to by the defendant, on the ground
that the persons so acting were not identified in any man-
ner as employees of the defendant, and on the further
ground that such subsequent conduct, even if authorized
by the defendant, could not be deemed as an admission of
prior negligence. While these objections were good, as far
as they went, and were so recognized by the court in its
instructions, they did not entitle the defendant to the ex-
clusion of the testimony. This testimony was admissible in
corroboration of the testimony on behalf of plaintiff that

4. EVIDENCE:
relevancy, ma-
teriality, and
competency:
nailing of
boards after
accident.

the boards were not nailed at the time of the accident, although they were admittedly found to be nailed 40 minutes later. Evidence was received over the objection of the defendant that a railing was constructed two or three days after the accident. The objection to this evidence should have been sustained. But it was later fully withdrawn by the court in its instructions.

5. EVIDENCE: relevancy, materiality, and competency: subsequent conditions not admissible.

IV. The defendant presented to the court 13 requested instructions, each of which was refused; and complaint is directed to such ruling. A careful examination discloses that all of these requested instructions except Nos. 1, 2, 4, and 10 were given by the court on its own motion. Slight but proper modification was made, in one or two instances. Requested Instruction 1 was a peremptory direction of verdict for the defendant. Requested Instruction 2 declared the negligence, if any, in the construction of the scaffold to have been the negligence of fellow servants. Requested Instruction 4 was a specific direction that the position of the lookout timbers supporting the floor boards was obvious to the deceased, and that it was the duty of the deceased to have the position of said lookout in mind, and to use ordinary and reasonable care to avoid placing his weight beyond or outside of said lookouts. Requested Instruction 10 instructed the jury "that, as a matter of law, the deceased assumed all of the risk incident to using the said scaffold while it was not provided with railing." This was put upon the ground that the absence of railing was obvious.

6. TRIAL: instructions: inconsistent or contradictory: correct when taken together.

What we have already said is a sufficient indication of our views that the requested instructions were properly refused. Complaint is made that Instructions Nos. 8 and 9 were inconsistent and contradictory. No. 8 dealt fully with

the question of contributory negligence. In its final sentence, it instructed the jury that, if the deceased did not exercise ordinary care, "then your verdict should be for the defendant." No. 9 dealt with the question of negligence of the defendant. It instructed, in effect, that, if the jury found the negligence of the defendant to have been the proximate cause of the fall of the deceased, "then you would be warranted in finding for the plaintiff." This instruction contained no saving reference to the contributory negligence of the plaintiff. These instructions are somewhat awkwardly put, but we do not think they can fairly be called inconsistent. They were intended to be read together, and there is no fair reason why No. 8 should be repeated by inclusion in No. 9. No. 8 stated to the jury that, if there was contributory negligence, no recovery could be had, although there was negligence on the part of the defendant. If the foregoing statement had been repeated in Instruction No. 9, it would fully meet appellant's complaint. While No. 9, standing alone, could be deemed objectionable, it does not stand alone. If we were to eliminate the figures 8 and 9, and were to put both paragraphs under one number, they might seem less objectionable, as mutually qualifying each other. We think it would be unduly technical to separate them for the purpose of rendering one of them incomplete.

Other minor questions are presented. The questions we have already considered, however, are the vital ones, and what we have said is quite decisive of other questions not specifically mentioned. We find no reversible error, and the judgment below is—*Affirmed.*

LADD, C. J., GAYNOR, PRESTON, and SALINGER, JJ., concur.