[No. 18449. Department Two. March 19, 1924.]

EDWIN AMSBAUGH *et al., Appellants,* v. DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*[1]

MASTER AND SERVANT (20-1)—WORKMEN'S COMPENSATION—EXTRA-HAZARDOUS EMPLOYMENT—SCOPE AND EXTENT. A boy employed in delivering daily newspapers on a regular route is not engaged in extra-hazardous employment, although the newspaper by which he was employed maintained a press room in connection with its business which was extra-hazardous, under Rem. Comp. Stat., §§ 7675, 7676, which recognize the fact that an employer in extra-hazardous engagements may conduct departments that are not extra-hazardous, and employees therein are not subject to the act.

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered September 18, 1923, dismissing an appeal from an order of the department of labor and industries denying a claim for compensation under the workmen's compensation act, tried to the court. Affirmed.

[1]Reported in 224 Pac. 18.

*John S. Lynch,* for appellants.

*The Attorney General* and *M. H. Wight, Assistant,* for respondent.

MITCHELL, J.—Edwin Amsbaugh, a boy employed on a monthly salary by the Washington Recorder Publishing Company of Olympia, was accidentally injured on a street in the city while engaged in delivering the company's daily newspapers, on a regular route assigned to him. A claim for compensation was filed in his behalf with the division of industrial insurance of the department of labor and industries, and by it rejected for the reason that the employment in which the workman was engaged at the time he was injured was not within the jurisdiction of the division of industrial insurance. The superior court of Thurston county, to which the case was taken by the claimant, upon consideration of the case, dismissed it, and from that judgment an appeal has been taken.

Printing is a part of the general newspaper business of the Washington Recorder Publishing Company. It maintains and uses a press room in connection with its business, and to that extent, and that only, it engages in work that is extra-hazardous and comes under the workmen's compensation act. Section 7675 and class 41, § 7676, Rem. Comp. Stat. [P. C. §§ 3470, 3471]. The delivery of newspapers is not enumerated as extra-hazardous employment, and the publishing company does not contribute anything to the accident fund on account of workmen engaged in the delivery of papers.

It is argued on behalf of the appellant, in effect, that, though ordinarily the boy's duties might not be considered in and of themselves inherently extra-hazardous, yet because he was working for an employer engaged in extra-hazardous industry, the boy's duties brought him automatically under the act. The

evidence shows, and it is not contended to the contrary, that the boy had nothing whatever to do with the work of printing or the operation of any of the machinery. His employment was to take the finished product, that is, the papers after they were folded, about 3:30 to 4 o'clock p. m. and deliver them to the subscribers out in the city. The papers were delivered to the boys in a room just outside the press room, and while it appears that the place of that delivery was not at all times sufficient to accommodate at once a lot of delivery boys just out of school each day hurriedly insisting upon getting a start in delivery of papers, and that therefore some of them would go into the press room and take their supply of papers from a stand situated some distance away from any of the machinery, it nevertheless clearly appears that their going into the press-room at all was incidental only and contrary to a positive rule of the business. By rule or otherwise it was not a part of their employment.

In the case of *Wendt v. Industrial Insurance Commission,* 80 Wash. 111, 141 Pac. 311, this court said:

"Again, the act recognizes in § 4 that the same employer may at the same time be engaged in employments both within and without the purview of the act, so far as the hazardous character of the employment is concerned; in which case the act shall apply only to the extra-hazardous departments and to the workmen employed therein. . . . If we could so construe the act that the extra-hazardous character of the employer's business was to be determined by the business he was principally engaged in, we might accept the finding of the commission; but the act, as we have seen, recognizes the fact that the same employer may conduct different departments of business, some of which fall within the act, some of which do not. And in this connection it matters not which is the principal business and which is the incidental business."

So in the present case, while the publishing company engaged in employments both within and without the act, the claimant's work was not in the extra-hazardous department, to which only the act applies.

Section 4 of the act provides the schedule of contributions to be made by those engaged in employments of an extra-hazardous character. The section further provides that if at the end of the year there shall be a deficit in the accident fund it shall be made good by further payments according to the classification set out in the section, and then it provided:

"If a single establishment or work comprises several occupations listed in this section in different risk classes, the premium shall be computed according to the pay roll of each occupation if clearly separable; otherwise an average rate of premium shall be charged for the entire establishment, taking into consideration the number of employes and the relative hazards. *If an employer besides employing workmen in extra-hazardous employment shall also employ workmen in employments not extra-hazardous the provisions of this act shall apply only to the extra-hazardous departments and employments and the workmen employed therein.* In computing the pay roll the entire compensation received by every workman employed in extra-hazardous employment shall be included, whether it be in the form of salary, wage, piecework, overtime, or any allowance in the way of profit-sharing, premium or otherwise, and whether payable in money, board or otherwise." Laws of 1911, p. 356, § 4.

Thereafter in 1915 the legislature in a reenactment of this section omitted the above italicized words. Laws of 1915, ch. 188, p. 674, § 1; Rem. Comp. Stat., § 7676. Therefrom it is contended on behalf of the appellant that the segregation by an employer of his workmen into extra-hazardous and non extra-hazardous classes was abolished and that all employees were brought within the operation of the act. To that contention we

cannot agree.    None except those engaged in extra-hazardous occupations are or were within the purview of the act, and the italicized language found in the original law neither added to nor took from it in any particular, and it was therefore quite proper to drop it in the recast of the section by the legislature in 1915.

Appellant calls attention to a laundry driver case, *Hansen v. Northwestern Fuel Co.,* 144 Minn. 105, 174 N. W. 726.    The principal controversy in that case was whether or not the plaintiff was injured in the course of his employment, it being held as a matter of law that the workman was within the compensation act, which provided in effect that *any person* injured might proceed against his employer.    The language of our statute is not so all inclusive.    To the same effect is the case of *Beaudry v. Watkins,* 191 Mich. 445, 158 N. W. 16, L. R. A. 1916F 576, under a statute apparently different from ours.

Affirmed.

MAIN, C. J., FULLERTON, and BRIDGES, JJ., concur.